Good morning, Your Honors. Sue Ellen Fullstone on behalf of Todd Lowe and the other taxpayer appellants. I'm going to begin by asking the court to consider the issue here in a different context. Suppose a state had a prison population of 9,000 inmates. And suppose the state adopted a law that said in order for these, or a practice I should say, in order for these inmates to enjoy any of the privileges of family visits or getting a job or whatever, they had to all, they had belonged to a certain religion. Clearly unconstitutional practice. And they set up an administrative process for inmate complaints. And one inmate pursued the administrative process. The practice was found to be unconstitutional. And the prison authorities say, fine, you know, you've made your point. The practice is, as to you, because you followed our administrative process and sought relief, we're going to, you know, we're not going to apply this practice to you. But for all the other 8,999 inmates who didn't pursue the administrative process, the rule still applies. And even as to you, you're going to have to go through this process again next year because this ruling is good for one year only. On those facts, I mean, yeah, there is a state remedy of sorts. An individual remedy for individuals who pursue the administrative process. But that remedy is plainly inefficient and inadequate under any standard. Because there are 8,999 inmates who are still subject to this unconstitutional practice. And that, you know, outside the tax context, that's really what we have in this case. We have a system in which there is an individual remedy that individual taxpayers can pursue. On the other hand, there is a class-wide remedy. Isn't the real problem in your case the alleged failure of the state to abide by the decision declaring that there was a problem with the method of valuation? In other words, in your hypothetical, if the prison said, okay, we get it, it's unconstitutional, never mind, we'll stop doing it, it's effective for everyone regardless of only one party bringing it. But it seems to me that the real issue for you is that they haven't obeyed it, or at least that's the allegation. It's true. If they followed the law, we wouldn't be here. But they take the position, and that's why we need a class-wide remedy, that the remedy applies only, whether the valuation is constitutional or unconstitutional, the remedy applies only to those who pursue the administrative process. So that they are entitled to continue to pursue their use of unauthorized, unconstitutional methodologies, save and accept for those individuals who pursue the process. So I agree completely. If they said, yes, what the Supreme Court has told us, that we cannot use unauthorized methodologies, we must follow the regulations of the tax commission, and if there are no regulations, you know, then, you know, we have to kind of punt, I guess. We can't change valuations. But that's not what they've done. They, you know, and it's a legal position they're taking, not, and we've tried declaratory relief. That's been told, we've been told that's unavailable to us. So the only remedy that taxpayers have, you know, on a class-wide basis, is this 1983 action in Federal court. Counsel, isn't it in the taxing situation, if you have a complaint about the assessed valuation, and you don't have to look to your neighbor's property in the county, you can go to the assessor's office and say you've made a mistake, you've got my properties mixed up with somebody else's, or no, the sewer isn't hooked up, or the house is falling down, or whatever the case is unique to that parcel of property. Then it's just a question of charging rate against value to get the tax. So the taxes for each property are independently adjudicated by the assessor, or controlled by the assessor, and the rate is controlled by the legislative body. That doesn't happen in prisons. Well, but that doesn't happen in Nevada, either, in terms of taxes. What we have here is not an individual adjudication of valuation. What we have, because we don't have a market value system in Nevada, we have what we call a taxable value system. And what our Supreme Court has said is that in a taxable value system, uniformity is established by the use of uniform methods of valuation. And so it isn't a matter of challenging individual valuations on the basis of, well, you said I had two fireplaces and I only have one, or, you know, you think my kitchen has marble countertops and it has, you know, something else. You know, it's not individual. This is methodology and it is class-wide. Then the real value of any property is not the basis of your taxation? It's a strange system. The market value of property is not the basis of property of real property taxation in Nevada. It is a system, a taxable value system. It is unique to Nevada. It is a combination. They separate the land from the improvements on improved land. They value improved land as land but without the improvements. They try to value that at market value. Then they value the improvements under a system, a special formula system. So what is really at issue here is the land value. And what happened in 2003-4 is that Washoe County Assessor used methodologies developed by himself to value land, the land portion of residential property at Lake Tahoe, at Incline Village and Crystal Bay, methods he did not use elsewhere in the county. It was because of the difference of methods that the Supreme Court said, you know, your valuations at Lake Tahoe, at Incline Village and Crystal Bay are unconstitutional and set them aside, that they, you know, they set the 17 aside for the 17 taxpayers who pursued the administrative process. The next year they set 34 aside for the 34 taxpayers who pursued the administrative process. The next year, you know, there's a mix of relief for 05. The 06, 07, 07, 08, 08, 09 cases are all still in the court system, all proceeding on an individual basis primarily because we, as taxpayers have been told, we have, we can't pursue a class action. We can't pursue a class administrative petition, which is why we're here seeking a Federal remedy because of the inadequacy, inefficiency, unavailability of a remedy under state law. I mean, I. Is the 2007 valuation similar to the methodology for the 2002, which was held unconstitutional? Actually, it's 2003-04 that's the first year that's held unconstitutional. But the devaluation was done. What happened, what happened for that period of time from 2003-04 through 2007-08 was a base, the base value was determined in 2003-04. That was determined to be unconstitutional. After that, they figured, they fiddled with that value sum for 05, 06, 06, 07, 07, 08, but they still worked with that base value. And the courts have determined that if you're working from an unconstitutional basis, you can't fiddle it into constitutionality. No matter what, you know, no matter what machinations you use to mess with that value, it remains unconstitutional. So the short answer to your question is yes. The 07-08 is based on taxes. The valuation is essentially the same base valuation as was found unconstitutional in 03-04 and continued to be used by the assessor for all of those continuing subsequent years. Did the district court make such a finding? The district court made such a finding, and I believe the Supreme Court made that finding as well in the Barta case. I have one minute left, which I'm going to reserve for my rebuttal unless somebody wants to ask additional questions, which I'm happy to answer.  Good morning, Your Honors. Nathan Edwards, appearing for Washoe County and the respondents in this case. I would like to start out by pointing out what I think is a significant concession that the appellants have made in this case in their briefs, particularly in their reply brief, and as you hear in the arguments this morning, is that what this comes down to is not whether in their minds there is a remedy that's adequate in the state system because they concede that there is a remedy that's adequate for taxpayers to use to pursue challenges to the valuation of their properties. But what they then argue or are in effect arguing is that it's not the remedy that they want, and they would like a different remedy and like to be able to pursue a different remedy. Well, I understand the argument slightly differently. Are you familiar with Patel v. City of San Bernardino, the 2002 case? Yes, I am. That seems to me to be, from my personal perspective here so far, is the crux of my problem with your side of the case. As I understand the allegations, the Nevada Supreme Court has held that the method of valuation was unconstitutional, and the allegation is that notwithstanding that whole holding, the method really hasn't changed. It's just remained the same, and that's what makes the remedy inadequate is that the state or the county assessor is not following what the Supreme Court has told it to do. And my response to that, Your Honor, is that that is an allegation at this point. The valuation... Right, but if it is, I think that may have been, I don't want to put words in his mouth, but that may have been what Judge Carney was getting at with his question, is whether there are adequate factual findings at this point to know whether that's true or false. Well, that would require, Your Honor, the federal court to pass originally on the validity of the methods being used, and in that particular... No, not at all. The Nevada Supreme Court has already passed on that question. The question is whether if the county assessor refuses to obey the Nevada Supreme Court, does that make the state remedy inadequate under Patel? And I guess that's how I would frame the question to you. Yes, and this is an important point that you're bringing up. And the reason that I think that's not the situation we're dealing with is because the Bax case and the holding in that court dealt with the 2002 reappraisal. They do it every five years. Right. But the new reappraisal is a different, we're starting over with a new reappraisal. Well, that's why there's a factual question. Because if the new reappraisal is exactly the same as the old one, contains the same constitutional infirmity,  Well, in Patel, Your Honor, the court, I had an interesting passage that stood out to me from the Patel case. And the court in that case said that, consequently this suit is considerably less intrusive than the suit in fair assessment where the federal court would have been required to determine the validity of the tax before awarding damages. So, in other words, the court in that case was having to take the first look at it. And in this case, Your Honor, because we have two different reappraisals and intervening regulation changes in the interim during that five-year period, what we would have in this situation is the federal court being asked to look at this new reappraisal and the methods under these new regulations and the new approach and comparing them and passing on the validity of those regulations in the first instance. Because the Bax case, Your Honor, dealt with that old reappraisal. That still seems like a factual inquiry at the first instance because you're saying it's different. They're saying it's not different. That's kind of a factual inquiry. If it is different, then your argument would flow from that. But if it's not different, I don't understand what the problem would be. And this circles back to what would be my contention, which is that the Tax Injunction Act, the policy is to allow the states to pass on the validity of these. And so in order for the court to make that determination, whether the appellants are correct or whether we're correct in that this is the same as before or different than before, the federal court has to weigh in to the determination. But that's not a question of validity. That's a question of description, which is different. But for the federal court to reach the conclusion that I think you're bringing up right now, it would have to essentially say, yes, this is the same as what happened in the Bax case, or no, this is something different than what happened in the Bax case. And if the court reaches the conclusion that it's the same as what happened in the Bax case, then the federal court is essentially passing on the validity of the taxation method. Because if the taxation method is the same as in Bax, then we have an invalid method. But it's our position that it's not. It's your position that the assessment process and the valuation are all legitimate and if illegitimate in any way can be corrected through the administrative process within the state, right? Yes, that's our position. Okay. And the taxpayers – sorry, my voice is a little bit cutting out on me this morning. The taxpayers in these cases have actually been successful at various levels throughout these processes. And they've obtained as well in the 2006 and 2007 tax year, for example, they obtained what amounts to class-wide relief in that case. And they've since gotten an order from the district court in Nevada, the state district court, in their favor to uphold what was an area-wide rollback. So there were 300 taxpayers that pursued cases and prevailed and then the Board of Equalization at the county level and then at the state level where they were upheld rolled back the rest of the properties for the entire area. And so that is the type of area-wide relief that appellants are hoping to invoke from this court, but they've already obtained that type of relief down in the state system. But I want to emphasize, VR, that the Act, as I read it and as I read the case law, really was designed to keep the federal courts out of that initial determination as to the validity of the state system. And I think there are a number of policies that it put into effect, but it had become a common practice, I think, or had been something that was happening too freely for the federal courts to be giving injunctive relief in those cases. And actually, along those lines with the policy statements of the Tax Injunction Act, I did a quick search just on Westlaw, and I searched the phrase Tax Injunction Act under the All Federal Cases database and I came up with 1,047 hits. And I did a Keysight sighting reference search on the statute itself and I came up with almost 7,000 hits, so 6,800 hits. And so I think that policy of Congress wanting the federal courts to restrain themselves from being involved in these state tax questions is still something that's valuable and alive and well because there is a barrage of these types of cases that make their way into the system. And I think, as we're looking at here, taxpayers hope to invoke as many exceptions to this act as they can to get into federal court. The hypothetical that Ms. Fullstone raised with the prisoners covers the same issue that we were talking about with the reappraisal in 2002 and the reappraisal in 2007 for the 08-09 tax years. In the hypothetical, the rule that was originally challenged would be the unconstitutional rule instead of an as-applied challenge. And in this case, we have a situation where, as I understand it, the appellants are not challenging the actual rule. They're challenging the way the assessor is using the rule. So I think that's different than the hypothetical that was raised because in the hypothetical there already was a determination that the rule itself was invalid whereas in this case there was a determination that the prior practice was invalid but not that the current practice is invalid at the state level. Finally, real quickly, the idea that the absence of class relief, even assuming that's the case, and that comes primarily from that Bamford case. Bamford was a racial discrimination case and I think the necessity for class-wide relief in racial discrimination cases is something quite different than what we're dealing with in the taxpayer scenario where we have an individualized system set up for everybody. Thank you. Thank you, counsel. Ms. Fullstone, you have some rebuttal time remaining. Thank you, Your Honor. Start just briefly. When Mr. Edwards tells you that the taxpayers have obtained class-wide relief, that's wrong on two grounds. One, taxpayers haven't obtained anything. The county board of equalization and the state board of equalization each have affirmative duties of equalization. They're not remedies that the taxpayer can pursue or did pursue in this case. The rollback that was ordered by the county board of equalization and affirmed by the state board was completely a sua sponte exercise of the county board's duty under the statutes and regulations. At the same time, what Mr. Edwards fails to say is that we've gotten no relief because the county still takes the position that the county board of equalization didn't have the authority to do that. And so they have opposed that rollback relief and no rollback relief has been afforded as of yet. I also want to just briefly touch on this issue of the two appraisals. The Bax ruling is actually broader than the court suggests. In Bax they said, yes, you know, view classification is unauthorized, is invalid because it's an unauthorized methodology. And the use of teardowns as vacant land sales is unauthorized and you can't use it and it results in unconstitutional valuations. But the principle of Bax is that any methodology used in valuation that is not authorized by tax commission regulation for use throughout the state as a uniform valuation methodology is unconstitutional or results in unconstitutional valuations. What, you know, it is ‑‑ Counsel, counsel, you've exceeded your allotted time. So if you'd like to sum up very briefly, you may. I will be brief. To me the, you know, certainly we never acknowledge that the individual remedy is adequate. The inadequacy of the individual remedy here is patent when you look at the numbers. In 6 years and 54,000 unconstitutional assessments, some 2,100 taxpayers have achieved partial relief. That to me on its face is an inadequate remedy. Thank you, counsel. We appreciate the arguments of both counsel. They've been very helpful. And the case just argued is submitted.
judges: Carney, Beezer, Graber